**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Khreistina Marshall,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-24-03155-PHX-MTL<br><br>**ORDER** |

At issue is the Social Security Administration's denial of Plaintiff Khreistina Marshall's application for Title II Disability Insurance ("SSDI") and Title XVI Supplemental Security Income ("SSI") benefits under the Social Security Act. Marshall filed a complaint and an opening brief with the Court seeking judicial review of those denials. (Docs. 1, 11.) Defendant Commissioner of the Social Security Administration ("Commissioner") responded (Doc. 14), and Marshall replied (Doc. 15). Having reviewed the briefs (Docs. 11, 14, 15) and the administrative record ("A.R.") (Doc. 10), the Court affirms the Administrative Law Judge's ("ALJ") decision.

**I.   BACKGROUND**

    **A.   Procedural History**

On January 6, 2022, Marshall applied for both SSI and SSDI benefits with an alleged onset date of June 1, 2021. (A.R. at 233, 241.) Both claims were first denied on April 6, 2022, and denied after reconsideration on February 24, 2023. (*Id.* at 122, 127.) On April 10, 2023, the Commissioner received Marshall's prompt written request for a hearing

before the ALJ. (*Id.* at 143.) The ALJ held a telephonic hearing on April 9, 2024, during which Marshall, her attorney, and a vocational expert offered testimony. (*Id.* at 44.) On May 7, 2024, the ALJ denied Marshall's applications and issued an unfavorable decision. (*Id.* at 17-37.) Marshall then filed a request for review with the Appeals Council, which it denied on September 13, 2024. (*Id.* at 1-3.) Now Marshall asks the Court to review the denial pursuant to 42 U.S.C. § 405(g). (Doc. 1 at 1-2.)

### B.     ALJ Determination

After weighing objective medical evidence, opinion testimony, and Marshall's subjective symptom testimony, the ALJ evaluated her disability claim based on the following severe impairments: (1) anxiety disorder, (2) depressive disorder, and (3) PTSD. (A.R. at 23.)

The ALJ found that Marshall "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) Next, the ALJ determined Marshall's residual functional capacity ("RFC").* The ALJ found she had the "residual functional capacity to perform a full range of work at all exertional levels but with . . . nonexertional limitations" that limited her to carrying out simple tasks and instructions with little if any decision making, without production rates or hourly quotas, and without regular cooperation with coworkers or interactions with the public. (*Id.* at 25-26.) Based on this RFC and the testimony of the vocational expert, the ALJ found that Marshall could perform jobs that existed in significant numbers in the national economy, including industrial cleaner, housekeeping cleaner, and routing clerk. (*Id.* at 36-37, 71-76.) Thus, the ALJ concluded that Marshall was not disabled from the time of her application according to § 1614(a)(3)(A) of the Social Security Act. (*Id.* at 37.)

## II.     LEGAL STANDARD

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set

---

* Residual functional capacity refers to the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

- 2 -

aside the ALJ's determination only if it is not supported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant is not working in a substantially gainful activity, then the claimant's case proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant's impairment is severe, then the inquiry proceeds to step three. *See id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, then the ALJ assesses the claimant's RFC to determine whether the claimant is still capable of performing past relevant work before moving to step four. *Id.* § 416.920(a)(4)(iv), (e)-(f). At step four, the ALJ must determine whether the claimant

retains the RFC to perform the requirements of past relevant work. *Id.* If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (g). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

### III.    DISCUSSION

Marshall raises two facets of the same issue before the Court. She argues that the ALJ committed harmful error by (1) discounting her symptom testimony without articulating clear and convincing reasons grounded in objective evidence and (2) finding that Marshall's activities of daily living are inconsistent with her symptom testimony, rendering the ALJ's reasons for discounting the testimony invalid. (Doc. 11 at 11, 15.) In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's symptom testimony and that the findings were supported by substantial evidence in the record. (Doc. 14 at 4.)

To evaluate a claimant's symptom testimony, an ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has shown sufficient "objective medical evidence of an impairment that 'could reasonably be expected to produce the pain or symptoms alleged.'" *Tristan v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02240-PHX-DWL, 2022 WL 1707953, at *6 (D. Ariz. May 27, 2022) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Then, the ALJ must evaluate the claimant's statements in the context of the objective medical evidence and other evidence in the record and "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." 20 C.F.R. § 416.929(c)(2)-(3); *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). When reviewing this objective medical testimony, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged

severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Although the "clear and convincing standard is the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If "the evidence is susceptible to more than one rational interpretation," the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008), *superseded on other grounds by* 20 C.F.R § 404.1502(a).

When assessing the claimant's credibility, the ALJ may consider "inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains." *Thomas*, 278 F.3d at 958-59 (citation modified). Should the district court find that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court may not second guess the ALJ's judgment and must affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

On the first step, the ALJ determined that Marshall's impairments could reasonably be expected to cause her alleged symptoms. (A.R. at 27.) On the second step, however, the ALJ determined that Marshall's "statements concerning the intensity, persistence and limiting effect of these symptoms [could not] reasonably be accepted as sufficiently consistent with the medical evidence and other evidence in the record." (*Id.*)

**A.    Consistency with Marshall's Medical Records**

The ALJ concluded that "[n]o objective evidence justifies a conclusion that [Marshall] would be unable to persist at [her current] level of activity" in an employment setting. (*Id.* at 35.) Marshall argues that the ALJ "cherry-picked" evidence to support its reasons for discounting her symptom testimony, ignoring the waxing and waning nature of her impairments. (Doc. 11 at 11-12.)

The ALJ assessed the medical record regarding Marshall's anxiety, depression, and

- 5 -

PTSD, noting several inconsistencies between Marshall's subjective testimony and the objective medical findings. For example, Marshall reported that she was experiencing worse symptoms at her hearing than she had experienced before her hospitalization. (A.R. at 66.) Marshall was hospitalized for two weeks in June 2021 for a mental breakdown. (*Id.* at 404-63.) During her hospitalization, practitioners noted her sad mood, flat affect, and occasional evidence of psychotic processes or hallucinations. (*Id.* at 425, 432, 435, 437, 439, 441, 443, 445, 447, 449, 451.) But at all times during her hospitalization and afterwards, Marshall's practitioners described her as polite and cooperative without impairments to her cognition, communication, memory, or attention. (*Id.* at 426, 432, 435, 437, 439, 441, 443, 445, 447, 449, 451, 453, 455, 457, 459.) Marshall herself often reported her moods as more stable after hospitalization and indicated the greatest fluctuations when she did not take her medication. (*Compare, e.g.*, *id.* at 487, *with id.* at 482.) Moreover, despite Marshall's testimony at her hearing, at no point was she hospitalized a second time. (*Id.* at 32.)

Furthermore, the ALJ repeatedly pointed to objective evidence in the medical record that was inconsistent with Marshall's symptom testimony regarding her mood swings and motivation. The ALJ noted twenty-five instances in Marshall's treatment history when her providers described her cooperation, cognition, memory, and attention as within normal limits during the mental status exam. (*Id.* at 27-32.) Thus, the ALJ found that Marshall's testimony about the pervasive, consistent nature of her symptoms were not sufficiently consistent with her medical record.

Having reviewed the record, the Court finds that substantial evidence supports the ALJ's finding that Marshall's symptom testimony was not sufficiently consistent with the objective medical record. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). An ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the

subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (internal quotation marks omitted). Here, the ALJ took into account the limitations alleged but tempered his understanding of the severity of Marshall's symptoms based on objective medical evidence. Taken together with the objective medical evidence, Marshall's subjective symptom testimony could reasonably suggest that Marshall's impairments varied such that she experienced severe limitations but swung back to a cooperative, pleasant, and cognitively appropriate mood at most appointments. But the ALJ's finding that Marshall's consistently appropriate grooming, cooperation, and cognitive functionality over the course of many appointments suggested that her impairments were less severe than alleged was also reasonable. Marshall asks the Court to adopt an alternate reading, but between two reasonable interpretations, the Court will uphold the ALJ's determination. *Tommasetti*, 533 F.3d at 1038. Therefore, the ALJ properly relied on the objective medical record as one clear and convincing reason to discount Marshall's symptom testimony.

### B. Consistency with Activities of Daily Living

The ALJ also determined that Marshall's testimony about her activities of daily living contradicted her claims about "the intensity, persistence, and limiting effects of her symptoms." (A.R. at 27.) Daily activities support an adverse credibility finding if the claimant can "spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting . . . ." *Fair*, 885 F.2d at 603. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). When an ALJ rationally interprets a claimant's daily activities—even if there is more than one rational interpretation—the decision will be upheld. *Burch*, 400 F.3d at 680.

Here, the ALJ determined that Marshall's self-reported activities of daily living were not consistent with the severity of the symptoms she alleged. (A.R. at 33.) The ALJ considered Marshall's testimony and subjective reports that she maintained regular activities which included caring for three children, taking the children to school, attending

parent-teacher conferences, going to the park, driving, shopping, and going out to eat. (*Id.* at 24-25.) Marshall also testified that she cared for her mother while her mother was ill and advocated to gain custody of her boyfriend's son. (*Id.* at 1305, 1358.) Additionally, the ALJ also noted that despite missing medication "several times a week," that Marshall continued her daily activities and "generally indicated she was doing alright." (*Id.* at 32.) While Marshall may have preferred a more nuanced explanation, the ALJ adequately considered Marshall's ability to engage in these activities based on her anxiety, depression, and PTSD. (*Id.* at 24-25.)

Marshall cites *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017), to suggest that the ALJ improperly considered her childcare activities as inconsistent with her symptom testimony, but this case is distinguishable. In *Trevizo*, the claimant suffered severe psoriasis, diabetes, and psoriatic arthritis, among other ailments. *Id.* at 669. She often took naps throughout the day, took several showers to alleviate itchiness and odors, and rested as necessary. *Id.* at 672-73. That claimant also cared for three foster children, all under age eight. *Id.* at 673. But that ALJ failed to develop the record to establish what caring for those children entailed, citing only "one-off events," like transporting the children to doctor's appointments or attending foster hearings telephonically when necessary. *Id.* at 676. The *Trevizo* court held that the ALJ's reasons for discounting symptom testimony could not rest on such dearth of detail. *Id.* at 683.

By contrast, the ALJ here inquired into both the details and frequency of Marshall's childcare duties. For example, Marshall testified that she cared for others in her life. (A.R. 58.) The ALJ then asked, "What do you do for the people around you?" (*Id.*) Marshall stated that she took her children to school, picked them up, danced with them when she felt able, did their laundry, and tried to cook healthy meals for them. (*Id.* at 59.) As such, Marshall's daily activities—including childcare—served as appropriate context for assessing her credibility, and the ALJ properly relied on them in determining that her functionality was greater than her testimony indicated. *See, e.g.*, *Burch*, 400 F.3d at 680 (upholding an ALJ's determination that a claimant's ability "to care for her personal needs,

cook, clean and shop 'suggest[ed] that she [was] quite functional'" (citation omitted)). Substantial evidence supports the ALJ's conclusion that Marshall's daily activities contradicted her testimony about the severity of her limitations. Therefore, the ALJ offered specific, clear and convincing reasons to discount Marshall's symptom testimony.

Even if the foregoing reasons were insufficient, any error would be harmless because the ALJ offered other clear and convincing reasons for discounting Marshall's symptom testimony beyond Marshall's claims. Courts can only consider claims actually raised by a plaintiff. *Lewis*, 236 F.3d at 517 n.13; *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Here, Marshall only contested the ALJ's interpretation of her symptom testimony based on the objective medical evidence and her activities of daily living. (Doc. 11.) But the ALJ raised several other bases for his findings that she was not disabled, namely, her positive response to treatment and her statements to medical providers that she had more stable moods. (A.R. at 32.) As such, the ALJ would have come to the same conclusion with or without the above findings. Although the Court finds no error in the ALJ's conclusions, any such error relative to Marshall's claims would have been harmless.

**IV.  CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the May 7, 2024, decision by the Administrative Law Judge (*Id.* at 17-37).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 9th day of January, 2026.

Michael T. Liburdi
United States District Judge